Good morning. May it please the Court, my name is Brian White. I represent the appellant Rosa Maria Jimenez-Gudino. Unless the Court has any other preference, I intend to focus in on two points. One is the Court's abuse of discretion in admitting the administrative findings, and the second issue concerning whether or not that was harmless error or not. Well, if I can just ask you this, you know, you make some good points in your brief, but the mother's testimony, which is later contradicted, is clearly some evidence that I don't think you even dispute could be taken into consideration. Yes, I agree with that. So the element is there. Are we really looking at a harmless error analysis? I think we are at the end of the day. I think that's really where the inquiry is. I think the Court was clearly in abuse of discretion when it admitted the N-600 findings and so forth. So in the harmless error analysis, I think what this comes down to, this was a very fact-intensive case. The government contested certain facts, the defense contested certain facts. What compounded the matter is that there was certain evidence that was admitted that was clearly admissible, the A-file type of documents, the warrant of removal, the order of deportation, those types of things which clearly come in. We're not disputing that. What was at issue, though, was the administrative finding. But you do agree, do you not, that there was evidence that does not partake of the infirmities that you are charging here that could have provided the issue here, right? I agree with that. But the difficulty is that I think that if we did not have this administrative finding in, then the jury would have had to make a fact determination on their own. And regarding the mother's testimony, she indicated to, at one point in the N-600 application, to the administrative officer that the husband didn't come back during this requisite period of time. And then at trial, she clarified that, meaning he didn't come back on a permanent basis until 1954. I know she changed her testimony, and I realize that that could have been weighed out. My point was just simply that if we agree with you, you still have a, there's still evidence that was introduced by the government that could supply the necessary element of the crime that's alleged. So it really is down to a jury determination, right? Right. And I think what happened is that this administrative finding really tipped the balance. Because this is the core of the issue. We have a factual dispute. Take this administrative finding out of the equation. The jury's going to make a determination on whether or not this element was met, whether or not the mother's credible, whether her explanation for changing her testimony is credible. That's a jury determination. What findings specifically are you referring to? There were a whole bunch of findings. Which finding in particular? I'm referring to the denial of the N-600, where the The fact of denial? No, not the fact of denial, but I'm referring to the fact where Susan Bolaños testified that I do not have any evidence, there's no evidence before us to show that the father met the critical five-year period. He did not have the five years. The five-year period is critical. But wasn't there other evidence, that's Judge Smith's question, wasn't there other evidence along those lines, too? There was evidence that he was present. So we have And the government offered evidence that would support the finding that you're complaining about, is what I'm saying. The government provided some evidence in terms of statements from the declaration from the mother, statements from Ms. Jimenez-Gudino, but the problem is that they introduced this evidence of this administrative finding where the administrative officer made a factual determination that the father was not here during those five-year periods. And the problem that we complain about But if the denial can come in, which you say it can, the fact of denial, doesn't that necessarily mean that she must have found all the things to support the denial? No, I would say actually, I think I misspoke on that. I don't think the fact of denial should come in because it's based on, in this case it should not have come in because The government can't prove, when she says I was a derivative citizen, the government can't prove that she hasn't been granted derivative citizenship? They can prove she hasn't been granted, but it was the man Well, how do they prove it if they can't prove the fact of denial? Well, I guess what we're complaining of is the explanation for the denial. Well, that's what I'm getting at. The explanation came in through other witnesses. No, the explanation, I don't think it did. I think the explanation came in through Susan Boulogne, who said I reviewed all these documents and there's no evidence that he was here for the five-year period. And she made that factual determination, which was contained in Exhibit No. 9, the denial order, and then reiterated again in the denial of the appeal. So that, and if you look at the language, so this is what the jury had before them. They had in here a hearing officer who was basically bolstered as an expert and who's done thousands of these N-600s and thousands of A-files, makes a factual determination that the father was not here during the five-year period. And then the jury is told that you can consider that as a factor in whether or not the government's met its elements. And the problem is, because this was such a factually intensive case, that that judicial, that administrative finding carried so much weight. And it was clearly should not have been admitted in the first place. And this is why it has such great danger. Because of, because the weight that this expert carried, it would have been very easy for the jury to look at it, go back there and look at Exhibit No. 9, where the hearing officer makes a factual determination that the father wasn't here, makes a, and then gives plenty of testimony on that. The government argued that extensively. The judge did give a, give a limiting instruction about the use of it. He did. But I think that just even compounds the matter more. Because in that limiting instruction, he says, you may consider it. So here we have a situation where the, the court gave, admitted evidence which should not have been admitted to begin with. It was abuse of discretion to admit the evidence. Then he tells the, permits the government to argue it forcefully during, through the presentation of their argument, as well as in closing the argument. And then he gives a limiting instruction, so-called limiting instruction, which tells the jury that you may consider this as a factor. Counsel, what's your strongest case to support your argument that admission of that evidence constitute a reversible error? I think the strongest argument is that- The strongest case authority. Well, I think, in terms of, I don't have a case specifically on, on point other than what's in my, in my briefs. But the, I guess the, the issue is that, and, and there's, there's no case in the government side that's a string of cases that directly address this derivative citizenship. This is a really kind of a fine issue. And the, I think because it was such a, a close call, and it, because it should not have been admitted in the first place, that it was an abuse of discretion. And it was harmful because of the, because of the close call of this, of the facts of this case. So you're asking us to make new law on this point? No, I'm asking the court to find that this was, that this was not harmless error, that it was harmful given the facts of this case. You're relying on the rules of evidence rather than on a case, if I understand correctly. Yes. Yeah. And just to follow up on, on that, the, I think you indicated that with respect to the hearsay component, the, the business bit records exception, you said that this was irrelevant, if I recall correctly. Is that your, is that your recollection as well? Yes. I mean. If that's true, then why wouldn't the harmless error exception apply here? If something's irrelevant, how could it possibly be very deleterious to your, to your case? I think it's, it's irrelevant in terms of the different burdens of proof. So at the administrative hearing, we have a, a finding that's based on a preponderance of the evidence where the applicant, my client, had the burden of proof. No, I, I understand that. I, I guess what I'm wrestling with, we talked at the beginning about the, the harmless error component of it. I think you indicated that that probably is where our analysis needs to finalize. I'm simply saying that with respect to the, your allegation that, that the, the documents that were there, and in addition that it was irrelevant. So I'm simply saying, aren't you kind of shooting yourself in the foot? If it's irrelevant, then how can it really be very harmful in this case? I understand. And I think the, the relevance comes in, the fact that it's irrelevant is the, the fact of the administrative hearings officer's factual finding and conclusion of law. That finding is irrelevant in this criminal proceeding because we're dealing with a different burden of proof at the trial than in the criminal trial. So in that sense, her finding, whatever she found factually, is irrelevant to the jury's determination. That is for the jury to, to determine. So that's where I come down on that. Do you want to reserve your six seconds? I will. Thank you. Thank you, Mr. White. Good morning. Good morning. May it please the Court, Timothy Salell on behalf of the United States in this matter. First of all, I'd like to start off with the in this case. Certainly relevant to the issue of alienage in, just like in any other 1326 case where the deportation documents, a document by an immigration judge who finds that a, a individual is an alien, it can be admitted for the purposes of the alienage issue. But counsel, do those cases go so far as to say that the administrative findings are also admissible? Yes, Your Honor. I believe within those deportation documents, there's generally a administrative finding of alienage that the, that the individual is an alien and is deportable for various reasons. So those documents do support the general contention that administrative findings and conclusions by the administrative law judge, immigration judge, can be admissible on those issues. What's the strongest case that you would argue supports your position that the detailed findings are admissible? Your Honor, there's not, I cited in the brief Galindo Gallegos, Ramirez Cortez, Sotelo, Hernandez, and Contreras. What particular language in those cases supports your argument that the administrative findings, the detailed findings as opposed to the conclusion are admissible? Unfortunately, Your Honor, in all those cases, it's a very brief discussion regarding deportation documents in a defendant's A file and that they were properly admitted as a public record on the issue of alienage. But the discussion is very brief in all those cases. They don't go through the detailed findings being admissible. Counsel, following up on Judge Rawlinson's point, under 8038C, my understanding is that factual findings resulting from an investigation are admissible only as against the government as opposed to the other way around. How can you use them in the way that was done in this case? Your Honor, I believe other cases have held, not under 8038C, but 8038B have held that deportation documents, specifically the immigration judge's order, are admissible. What cases are you referring to? Hernandez-Herrera talks about deportation documents being admissible to prove alienage under the public records exception, as well as the other cases I previously cited, the Galindo...  Yes, Your Honor. Is it the same? It is a subset of the alienage issue, because in this case the government had to prove alienage and also prove a negative, that defendant was not eligible for derivative citizenship relief. And if I could briefly address the harmless error. If it wasn't properly admitted, it certainly was harmless in this case. The administrative findings and conclusions were based on undisputed admissions by the defendant and her mother. There was no credibility determination made by the adjudications officer. What statements? You're talking about the defendant, once he says, I know I'm not supposed to be here. Is that what you're talking about? No. The statements, the declaration, as well as the statements in the affidavit that were relied on by the adjudications officer in finding that the United States during the five-year period... Refresh my recollection, counsel. What statements did the defendant herself make respecting her citizenship, or derivative citizenship, other than... I remember the one about when they picked her up, she said, I know you're here because I'm not supposed to be here. But other than that, what did she say that you're relying on? Well, she admitted that she was born in Mexico. Obviously, she doesn't have personal knowledge of her father's whereabouts before she was born. But the mother provided a declaration, as well as signed a detailed affidavit, for which she was represented by counsel. The mother? The mother was, independently, during the prior adjudication. This is the first time, not when she contradicted that, right? Exactly. And so those findings were based on, by the adjudications officer, that the defendant was ineligible for derivative citizenship relief. It was based on undisputed evidence. The defendant's own submissions established that her father was outside the country during that five-year period. Did that contradict your testimony at trial? Directly, yes. Well, then, isn't that why it's harmful? If it's inadmissible, you can't use it to contradict her, whether it's reliable or not. But it's based on her own admissions. It's based on the... I understand that, but if we're going to decide that what's contained in the findings, as opposed to the order, that that's not admissible, it can't be used against her, the fact that it's highly probative doesn't make it harmless. It just means it was good evidence that you're not allowed to use. Well, I believe, given the limiting instruction, and given the clarification of the different burdens of proof, given the clarification that it's only a fact... I thought you were going to tell us it was harmless because it was cumulative of other evidence that had already come in. But if it directly contradicts her, and if it shouldn't have been admitted, how can you say it's harmless? Well, it certainly was powerful and germane to the issue, but it was based... the findings were based on her own admissions, admissions submitted by her counsel during the adjudication of the N-600. Yeah. So, I believe the limiting instruction put the findings and orders in proper context, so I believe that it would be harmless if it's improperly admitted. And remember, in this case, it's important to note that the adjudications officer was at trial, and testified at trial, subject to cross-examination regarding the different burdens of proof. The findings and order were not just presented and admitted into evidence. Presented through her, where she could be cross-examined by counsel regarding the different burdens of proof, whether or not there could be any additional evidence, all the things that make it less likely that there was any harm in this case, or undue harm, or any violation of due process, because she was there to be cross-examined by counsel. I want to make sure I understand it so I don't go back in there and really goof this up. But you're saying that this was harmless because it was reliable, and because of the limiting instruction. I'm saying that it's harmless because it is reliable based on her own admissions, based on defendant's own evidence, and the decision and orders were totally consistent with the undisputed evidence, and that... It's not undisputed evidence. It was all, you said it was disputed. No. The findings and order of the adjudications officer and the appellate... The adjudication was undisputed. Yes. But at trial, it's now disputed. It is. You said that the adjudications officer was a witness and was cross-examined. Is it your position that his testimony, in effect, rendered irrelevant? These issues of which the defense complains because of the cumulative nature of what he said, it was just duplicative of these same points, and the jury had a right to rely upon that? Yes, Your Honor. And also that... And also to clarify, the defendant had the opportunity to clarify that there could be additional evidence to be submitted at trial that could make the jury's determination different. So... On what basis was the adjudications officer's testimony admitted? Was it admission against interest on her part? Is that what it was? Or why wasn't that hearsay? She was presenting the... Obviously, authenticating the documents that she relied upon in making the adjudication, and she also was providing background regarding the issue of derivative citizenship and what standards she applied. What did she testify to that specifically proved the government's point, the element it needed to show, that this woman was not entitled to derivative citizenship through her father? What specific testimony did she give? She provided specific testimony based on the declaration of Concepcion Jimenez and her affidavit that the father, Justino Jimenez, was not in the country within the time... That goes back to the mother's earlier statement when she was represented by counsel. Exactly. Counsel, could that evidence have come in as impeachment evidence? I believe so, Your Honor. But in here, we had an unusual situation with this derivative citizenship defense. And given the fact that the alienage, and Smith-Balteker and other cases out of this court clarified that the alienage issue and the derivative citizenship, or lack thereof, is an element of the offense that the government bears the burden. So the government was in the difficult position of proving a negative in the case-in-chief. And once the derivative citizenship defense was presented, or at least an opening statement by counsel, we addressed that in the case-in-chief, since it goes to a direct element that the government has to prove. Thank you very much, sir. Mr. White, you want to take 30 seconds for rebuttal. Just one additional point that I wanted to clarify in terms of the harmfulness of this evidence is that there was also testimony from the uncle who was out here working in the railroads in 51 and 52 and saw my client's father present in Chicago, which supports the mother's changed testimony. And the bottom line is that the presentation at trial in terms of derivative citizenship was much different than it was at the N-600. And I think when you combine the erroneous court ruling together with the government's forceful presentation and focus on the N-600 administrative hearing, coupled with the jury instruction, that that results in harmlessness. Counsel, could this evidence have come in as impeachment evidence? The evidence of? Of the inconsistent statement of the mother at the administrative hearing. If she had made a, if it's a prior consistent statement, then the government could probably, I'm sure they could get that in as impeachment. So in terms of a prior statement, they would not be able to get that in their case-in-chief, however, which is what they did. So I think that's... On the case-in-chief and not take the risk that she, you know, wouldn't testify, and then they wouldn't be able to get any in. Right. Procedurally, it was kind of clumsy in terms of how the evidence came in. And I think that's a function of this derivative citizenship. It does force the government to prove a negative, and that's simply the way the law is written. And... Okay. But in retrospect, what should have happened is in their case-in- chief, they should have introduced just the fact that she was denied derivative citizenship. Right. Without any... If the case survived a directed verdict, then your folks would have gone on the stand, told their story, and then they could have been impeached with their statements at the hearing. Right. Except if we chose not to call the mother, we still had the uncle who, it was uncontested, was here in 51 and 52, and saw his cousin, my client's father, in the railroads. Gotcha. Okay. Thank you. Okay. Thank you both, gentlemen. The case argument is submitted. Good morning. 0755481, Ejigu versus City of Los Angeles. Each side has 10 minutes.
judges: Silverman, Rawlinson, Smith